# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br>Taleija S. BENNERSON aka 'Cleo'<br><br>*Defendant(s)* | )<br>)<br>) Case No. 2:24-mj-23<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  12/18/2023  in the county of  Franklin  in the
 Southern  District of  Ohio , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC Section 846 | Conspiracy to Possess with Intent to Distibute a Detectable Amount of Cocaine |

This criminal complaint is based on these facts:

See attached affidavit, which is incorporated by reference.

☑ Continued on the attached sheet.

*William Jake VonEssen*
Complainant's signature

William VonEssen Special Agent
Printed name and title

Sworn to before me and signed in my presence.

*Chelsey M. Vascura*
Chelsey M. Vascura
United States Magistrate Judge
Judge's signature

Date: 1/17/2024

City and state:  Columbus, Ohio   Chelsey M. Vascura, U.S. Magistrate
Printed name and title

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, William VonEssen, being duly sworn depose and state,

INTRODUCTION

1. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since January of 2022. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516. I am empowered to investigate, make arrests with or without warrants, and execute search warrants under the authority of 21 U.S.C. § 878. I hold a Bachelor's Degree in Aerospace from Middle Tennessee State University. The following represents my training and experience:

    a. I have completed the DEA Basic Agent Training Academy, which is a 17-week course in Quantico, VA that includes (but is not limited to) training in the following areas: surveillance, undercover operations, report writing, confidential source management, drug identification, legal principles, search warrant operations, case initiation and development, interview and interrogation, defensive tactics, physical training, and firearms proficiency. I continue to receive training on a daily basis by conducting criminal drug investigations and drawing from the expertise of agents more experienced than myself.

    b. As a DEA Special Agent, my experience also includes participating in criminal arrests, conducting physical surveillance, trash seizures, searching for evidence during court-authorized search warrants, and authoring search warrants as well as subpoenas.

    c. I have completed the DEA's Money Laundering Seminar, which is a three-day course in Quantico, VA that included training in the following areas: common money laundering schemes, money laundering techniques, the relationship between drug trafficking and terrorism financing, Chinese money laundering, utilization of the Financial Crimes Enforcement Network (FINCEN), specific money laundering violations (structuring, bulk cash smuggling, avoiding reporting requirements, international money laundering, etc.), virtual currency money laundering, and asset identification/tracing.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from myself, other agents, and law enforcement officers. This affidavit is intended to show merely that there is sufficient probable cause and does not set forth all of my knowledge about this matter.

PROBABLE CAUSE

3. On or about September 28, 2022, the Kentucky State Police (KSP) conducted a traffic stop on a vehicle being driven by Tyshaun MOBLEY, there were no other occupants. Upon a probable cause search of the vehicle, the KSP located six kilograms of cocaine, and a firearm in the vehicle. MOBLEY stated that she was en-route to Columbus, OH and Warren, OH for the purpose of distributing the cocaine. MOBLEY explained that she was going to meet a black male she knew as 'T' at 923 E. 18th Avenue in Columbus, Ohio, who's telephone number was (614) 432-3868 to deliver either two or four kilograms of cocaine to 'T'. MOBLEY was then going to proceed to Warren, OH to deliver the remainder of the cocaine to another black male. Through law enforcement databases, open-source research, surveillance, and administrative subpoenas, 'T' was

identified as Timothy WOODS, who resides at 923 E. 18th Avenue and used the telephone number (614) 432-3868. In addition, the KSP and the DEA Lexington Resident Office (LRO) asked MOBLEY to call WOODS, and explain that she was running late, which she did. The KSP and the LRO then asked MOBLEY to call Charles DUNN, who was identified as her source of supply, and explain that she was running late, which she did.

4. Via a review of records of MOBLEY's cell phone as well as a review of records for WOODS' cell phone that was gained per an administrative subpoena, investigators observed a pattern of contact between MOBLEY and WOODS prior to the traffic stop that generally was indicative of a courier-trafficker relationship. Investigators then observed a similar pattern of communication between a telephone number that was used by **Taleija BENNERSON** and WOODS shortly after the traffic stop. Investigators applied for and were granted a search warrant for historical location records for **BENNERSON**'s cellular device. Investigators observed that **BENNERSON** was engaged in a pattern of travel consistent with operating as a drug courier. For example, though she resided outside of Atlanta GA, **BENNERSON**'s cell phone put her in Columbus, OH for short periods of time on or about September 29, 2022, as well as the following month on October 13th and 14th, each time only to return to Milledgeville, GA within just a few days. As a result, investigators applied for, and were granted a search warrant for geo-location (ping) data for the same cellular device. Throughout the warrant's authorized period, investigators again observed that **BENNERSON**'s travel was consistent with that of a drug courier, as she travelled from her home residence in Milledgeville, GA to the Atlanta, GA metro area where DUNN resided, several times over November and

December of 2022. Additionally, **BENNERSON** made trips to Augusta, GA, New Bern, NC, Knoxville, TN, Jacksonville, FL, and Columbia, SC. Additional coordination with investigators with the Atlanta Division Office (ADO) revealed that **BENNERSON** had been surveilled at known cocaine deals with DUNN and identified by the ADO as a possible drug courier for DUNN as well.

5. On the basis of information connecting WOODS, DUNN and **BENNERSON**, on or about October 11, 2022, investigators deployed an electronic surveillance platform (ESP) at WOODS' residence at 923 E. 18th Avenue in Columbus, Ohio. On or about October 13, 2023, at about 11:10 p.m., investigators observed a white hatchback style vehicle arrive in the driveway of 923 E. 18th Avenue. As the vehicle arrived, WOODS emerged from the residence, 923 E. 18th Avenue, and greeted the driver of the vehicle. WOODS retrieved a backpack from the rear of the vehicle and spoke to the driver for a few minutes before taking the backpack inside the residence of 923 E. 18th Avenue. WOODS re-emerged without the backpack a moment later, appeared to hand something to the driver of the vehicle, and re-entered the residence as the vehicle departed the area. Through an administrative subpoena to the telephone provider, investigators noticed **BENNERSON** and WOODS were in telephonic contact with each other about thirteen minutes prior to the above interaction. Based on my training and experience, I know that drug couriers often speak to drug traffickers regarding updates on their travel (like MOBLEY did) and often speak with them as they're about to arrive.

6. On the same day, at around 11:30 p.m., WOODS exited the front door of the residence, 923 E. 18th Avenue, with a backpack and entered a dark blue 2000 Chrysler 300M bearing an Ohio license plate HME8997 (a vehicle which is registered to WOODS per

the Ohio of Bureau of Motor Vehicles (BMV)) which was parked in the driveway. WOODS then departed the area driving HME8997. On or about October 14, 2022, at approximately 12:04 a.m., WOODS returned to 923 E. 18th Avenue carrying a backpack. On the same day, WOODS exited 923 E. 18th Avenue a total of six times from 12:05 a.m. to approximately 1:17 p.m. Of those six times, WOODS left with a backpack three times and what appeared to be a plastic bag twice. Of the two times WOODS left with a plastic bag, WOODS appeared to return to the residence empty-handed. The behavior by WOODS that was observed via electronic surveillance was consistent with the conducting of narcotics transactions.

7. As a result of the conduct observed on electronic surveillance, physical surveillance of WOODS was begun in December of 2022. On or about December 7, 2022, at approximately 8:00 p.m., a silver 2017 Lincoln MKC bearing Georgia license plate CVK5071, arrived in the driveway of 923 E. 18th Avenue. As CVK5071 arrived, WOODS stood on the porch of the residence associated with 923 E. 18th Avenue, and appeared to beckon with his hands towards CVK5071 and talk to the occupants. Once CVK5071 parked in the driveway, the driver exited CVK5071 and walked to the rear of CVK5071 as WOODS continued to stand on the porch. The driver of CVK5071 met WOODS at the porch, and both parties walked inside the residence. Approximately two minutes later, the driver of CVK5071 exited the residence, entered the driver's seat of CVK5071, and departed from the residence. Later the same day, a traffic stop was initiated on CVK5071 for a traffic infraction by the Franklin County Sheriff's Office (FCSO) near the intersection of Morse Road and Heaton Road in Columbus, OH. The driver of CVK5071 was identified as Chase Leequan WOLFE FISHER and the sole

passenger was identified as Stephen Eric ALLEN. During the course of the traffic stop, a search of CVK5071 based on probable cause established via a positive alert from a FCSO drug-sniffing K-9 was completed. During the search, nine individually wrapped 'corner bags' containing white powder, all contained within one Ziploc style plastic bag weighing approximately 290 gross grams was located in a safe found in the trunk of CVK5071, and was subsequently seized. A sample of the white powder taken from one of the nine individually wrapped "corner bags" was field-tested for cocaine with positive results. ALLEN has been arrested and indicted on drug trafficking charges based on this and other evidence by the Norther District of Georgia.

8. The investigation continued in both Ohio and Georgia, and on or about February 18, 2023, WOODS was intercepted on the DEA Atlanta Division Office (ADO)'s court authorized T-III order on telephone number (470) 526-4638, which was a telephone number utilized by DUNN. Investigators reviewed the transcript, and it appeared as if WOODS was asking his cocaine source of supply, DUNN, if he had any cocaine for sale since WOODS had a customer ready with 'cash on delivery.' DUNN responded in the affirmative, saying that his own source of supply would set aside ten kilograms of cocaine for WOODS.

9. Throughout August of 2023, investigators observed activity akin to drug trafficking when surveilling TYREE Jr. and established that while TYREE Jr. was also being supplied cocaine from a second source of supply from the East Coast, TYREE Jr. was also involved in a drug trafficking conspiracy with DUNN and WOODS. Investigators identified that TYREE Jr. appeared to be operating out of his personal residence also at 5802 Wellbrid Drive, Galloway, OH and a suspected stash-house for TYREE Jr. at 104

Florence Avenue, Franklin Township, OH. Investigators conducted two trash pulls of trash from 104 Florence Avenue and discovered an extreme amount of drug packaging in the trash, including plastic bags, torn pieces of plastic packaging, and masks. A plastic bags/piece of a plastic bag from each trash pull field-tested positive for the presence of cocaine. Investigators also observed similar packaging in the trash of 5802 Wellbrid Drive, however these items did not field test positive for cocaine. Investigators also conducted toll analysis of telephone numbers known to be used by TYREE Jr. and discovered numerous historical contacts with DUNN.

10. On or about September 6, 2023, investigators served a search warrant at TYREE Jr.'s residence of 5802 Wellbrid Drive, and at his suspected trap-house at 104 Florence Avenue. Inside 5802 Wellbrid Drive, investigators located packaging consistent with the distribution of bulk amounts of drugs, a fentanyl test strip, rubber gloves, four firearms, and at least four cellular telephones in the residence. TYREE Jr., was present at the residence at the time of the warrant. Inside 104 Florence Avenue, investigators located a kilogram press with fentanyl residue nearby it, two firearms, a small quantity of suspected marijuana, and one cellular device at James SMITH was present at the residence at the time of the warrant at 104 Florence Avenue. The firearms and cellular devices (or their data) were seized, and all involved persons were released once the warrants were executed.

11. Investigators located evidence of drug trafficking in TYREE Jr.'s and SMITH's cellular devices. Both devices included numerous conversations about meeting up with various users of other telephone numbers related to apparent drug transactions.

12. The Columbus DEA has further developed multiple confidential sources and sources of information that have first-hand knowledge of the operation of the DUNN, WOODS, **BENNERSON**, TYREE Jr., TEAGUE, and VARGAS drug trafficking conspiracy. On September 13, 2023, Confidential Source 1 (herein CS 1) was interviewed and summarized how much cocaine he/she had delivered to WOODS and TYREE Jr. CS 1 estimated that he/she delivered three to five kilograms of cocaine to WOODS in 2023. CS 1 estimated that he/she delivered thirty to fifty kilograms of cocaine to TYREE Jr. in 2023. CS 1 claimed that all of the cocaine delivered to WOODS and TYREE Jr. was from his/her source of supply in New York City, NY and not from DUNN. CS 1 was then asked to estimate how much in bulk U.S. currency via drug proceeds he/she picked up from WOODS and TYREE Jr. CS 1 estimated that a courier positively identified by CS 1 and law enforcement as Carlton TEAGUE had picked up about $100,000 in drug proceeds from WOODS and TYREE Jr. on behalf of him/her. TEAGUE at one point also sent CS 1 a picture of a brick of cocaine, which CS 1 claimed was a 'bad' brick that either WOODS or TYREE Jr. was complaining about, and that TEAGUE was simply just relaying the message to him/her. CS 1 estimated that a second courier, positively identified by CS 1 and law enforcement as Yomaira VARGAS had picked up $40,000 in drug payments from TYREE Jr. in April of 2023. Finally, CS 1 also admitted that he/she had personally picked up about $100,000 in drug proceeds him/herself from WOODS and TYREE Jr. in 2023. CS 1 admitted that all of the U.S. currency he/she, TEAGUE, and VARGAS picked up was drug proceeds and was used to further the drug trafficking enterprise. These claims can be further independently corroborated since investigators have analyzed phone call, text, and GPS data from CS 1's cellular devices. Prior to CS

1's induction as a confidential source, it was evident that had been developed by law enforcement that CS 1 was directing TEAGUE and VARGAS to pickup drug proceeds from WOODS and TYREE Jr. throughout early 2023.

13. On or about December 18, 2023, investigators developed and spoke to an additional source of information with first-hand knowledge of the drug trafficking activities of DUNN, WOODS, TYREE Jr. and **BENNERSON**. Source of information 1 (herein SOI 1) indicated that DUNN was his/her source of supply for cocaine since the start of 2022 into early 2023.  SOI 1 stated the standards of operation was for him/her to communicate with DUNN, via telephone and order up kilogram quantities of cocaine that were then delivered by either MOBLEY, **BENNERSON**, or WOODS.  SOI 1 was able to positively identify MOBLEY, **BENNERSON**, and WOODS via pictures that were shown to him/her without context after he/she described them and their role in supporting his/her drug trafficking activities.  When the cocaine was delivered to him/her, the SOI 1 provided them with the drug proceeds in the form of bulk U.S. currency to pay for more drugs and keep the drug enterprise in operation. SOI 1 estimated that he/she received six kilograms of cocaine from DUNN which were delivered to SOI 1 by WOODS.  SOI 1 also estimated that he/she sent WOODS back with approximately $40,000-$60,000 in drug proceeds.  SOI 1 further estimated that MOBLEY had delivered eight kilograms of cocaine to him/her.  SOI 1 also estimated that he/she sent MOBLEY back with approximately $100,000 in drug proceeds.  SOI 1 estimated that **BENNERSON** had delivered him/her two kilograms of cocaine, and that he/she sent had sent **BENNERSON** back with $40,000-$60,000 in drug proceeds for payment to DUNN.

14. The majority of the information provided by CS 1 and SOI 1 has been independently corroborated by but not limited to surveillance, administrative subpoena returns, toll analysis, the analysis of content on seized cellular devices via consent or search warrant, intelligence provided by other DEA offices, court-authorized T-III's from the ADO and CDO, trash pulls, court-authorized ping data, court-authorized pen data, court authorized historical location data, interviews, open-source research, law enforcement database searches, and/or court authorized T-III wiretaps. Per the information provided, WOODS and TYREE Jr. were cocaine traffickers sourcing cocaine from CS 1 and DUNN, while **BENNERSON,** TEAGUE, and VARGAS acted as couriers transporting both cocaine and/or drug proceeds to/from Columbus, OH. DUNN, ALLEN, and MOBLEY were arrested in mid-2023 by the ADO for Federal drug conspiracy related charges and are pending trial on drug trafficking charges in federal court in the Northern District of Georgia.

15. In summation, the evidence gathered up to this point has established probable cause that during 2022 through 2023, WOODS acquired approximately twenty-five kilograms of cocaine and also conducted money laundering of the drug proceeds to the amount of $200,000.

16. Further, during 2022 through 2023, TYREE Jr. acquired approximately fifty kilograms of cocaine and also conducted money laundering of the drug proceeds to the amount of approximately $400,000.

17. Additionally, during 2022 through 2023, **BENNERSON** transported approximately eight kilograms of cocaine to WOODS and others in Ohio, and also transported bulk U.S. currency of drug proceeds to the amount of $200,000 from WOODS and others in Ohio.

18. Investigators have also established probable cause that during 2022 through 2023, TEAGUE transported bulk U.S. currency of drug proceeds to the amount of $100,000 from WOODS and TYREE Jr.

19. Investigators have also established probable cause that during 2022 through 2023, VARGAS transported bulk U.S. currency drug proceeds to the amount of $40,000 from TYREE Jr.

20. Based upon my training, experience and my review of the evidence gathered by agents and other investigators assigned to this investigation, there is probable cause to believe Timothy WOODS, Antonio TYREE Jr., **Taleija BENNERSON**, Carlton TEAGUE, and Yomaira VARGAS have violated 21 U.S.C 846, Conspiracy to Possess with Intent to Distribute a Detectable Amount of Cocaine. This affidavit is in support of a request for the issuance of a Federal complaint and Arrest Warrant for WOODS, TYREE Jr., BENNERSON, TEAGUE, and VARGAS.

*William Jake VonEssen*

William VonEssen

Special Agent

Drug Enforcement Administration

Subscribed and sworn before me this __17th__ day of January, 2024.

*Chelsey M. Vascura*
_____
Honorable Chelsey M. Vascura

United States Magistrate Judge

Southern District of Ohio